UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-cv-00010-LLK

REBECCA D. PACE                                                                                              PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. The fact and law summaries of Plaintiff and the Commissioner are at Doc. 16 and Doc. 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 16].

Plaintiff makes three arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, this Opinion will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's decision**

In concluding that Plaintiff was not disabled through the October 30, 2019 decision date, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 30, 2017, when she alleges that she became disabled. [Administrative Record, Doc. 11-2 at 125]. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments: degenerative disc disease; depressive disorder; anxiety; Meniere's disease; and fibromyalgia. *Id.* Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 126.

1

As in any case that advances beyond Step 3, the ALJ determined Plaintiff residual functional capacity (RFC). The ALJ found that, notwithstanding her degenerative disc disease, Meniere's disease, and fibromyalgia, Plaintiff can:

> … perform light work as defined in 20 CFR 404.1567(b), as follows: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; must avoid concentrated exposure to vibrations and hazards, including heights and unguarded moving machine parts; should not work in greater than moderate noise level;

[Doc. 11-2 at 127-28]. The ALJ found that, due to her depressive disorder and anxiety, Plaintiff is "limited to understanding, remembering, and applying information for simple and low-level detailed tasks and to frequent interaction with supervisors, coworkers, and the general public." *Id.* at 128.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 133. Fifth, the ALJ found that Plaintiff retains the ability to perform a significant number of unskilled, light jobs in the national economy. *Id.* at 134.

**The ALJ's decision is internally consistent regarding Plaintiff's ability to interact with others.**

As stated above, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. [Doc. 11-2 at 126]. In finding that Plaintiff's depressive disorder and anxiety do not satisfy Listings 12.04 and 12.06, the ALJ found that, in light of her "reports problems getting along with others," in the broad area of "interacting with others, [Plaintiff] has a moderate limitation" *Id*. Therefore, the ALJ continued the sequential evaluation process and found that, due to her depressive disorder and anxiety, Plaintiff is "limited … to frequent interaction with supervisors, coworkers, and the general public." *Id.* at 128.

In general terms, Plaintiff's first argument is that a "limitation" to "frequent" interaction with others is really no limitation at all. [Doc. 16 at PageID.1402]. More specifically, Plaintiff argues that the ALJ's decision is internally inconsistent. On one hand, the ALJ recognized that she has "moderate"

2

limitation interacting with others (for Listing purposes) but, on the other hand, the ALJ found that she can "frequently" interact with others (for RFC purposes). *Id*.

There was no inconsistency. The ALJ's Listing determination was a purely medical one, which required the ALJ to rate Plaintiff's abilities in four broad areas of mental functioning (the so-called paragraph B criteria), including ability to interact with others. As the ALJ explained:

> [T]he undersigned has considered whether the "paragraph B" criteria [of Listing 12.04 and 12.06] are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are as follows: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

[Doc. 11-2 at 126]. The ALJ found that Plaintiff does not satisfy the paragraph B criteria because she has moderate limitation in area 1, moderate limitation in area 2, mild limitation in area 3, and mild limitation in area 4. *Id.* at 127.

Unlike the Listing determination, in making the RFC determination, the ALJ was required to consider the medical evidence, non-medical evidence, and Plaintiff's credibility. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *3; SSR 96–8p, 1996 WL 374184, at *5. As in *Norris v. Commissioner*, "contrary to Plaintiff's assertion, the ALJ provided sufficient information for the reader to understand why, in the paragraph B criteria, the ALJ found Plaintiff had a moderate limitation in interacting with others but, in the RFC assessment, he determined Plaintiff can have frequent, instead of occasional, interaction with co-workers, supervisors and the public." *Norris v. Comm'r*, No. 1:19-CV-00133-HBB, 2020 WL 3041276, at *7 (W.D. Ky. June 5, 2020).

Even if the ALJ's decision was internally inconsistency, the error was harmless because there is no indication that the unskilled, light jobs the ALJ found Plaintiff can perform require frequent interactions with co-workers, supervisors, and the public. The ALJ found that Plaintiff can work as a marker (Dictionary of Occupational Titles (DOT) 209.587-034), routing clerk (DOT 222.687-022), and order caller (DOT

3

209.667-014). Those jobs apparently require only occasional interaction with others. *See Salmeron v. Comm'r*, No. CV 17-3927-JPR, 2018 WL 4998107, at *3 (C.D. Cal. Oct. 15, 2018) ("[T]he ALJ found that [Salmeron] … was limited to occasional interaction with the public, supervisors and coworkers [and] … the ALJ concluded that Plaintiff could perform … DOT 209.587-034 [and] … DOT 222.687-022"); *Marlow v. Comm'r*, No. 3:17-CV-435-TAV-HBG, 2019 WL 1272705, at *13 (E.D. Tenn. Jan. 11, 2019) (The ALJ found that Marlow was limited to "occasional interaction with coworkers and supervisors, and no interaction with the public [and] … [Marlow] has failed to demonstrate that his restrictions on interaction with coworkers, supervisors, and the public is in conflict with the position of an order caller [DOT 209.667-014].").

**The ALJ properly evaluated the medical opinions of Plaintiff's mental health providers.**

In January 2019, Plaintiff's treating sources at Adanta, therapist Julie Millerand and psychiatric mental health nurse practitioner (PMHNP) Tarah Mathews, completed the Medical Assessment of Ability to Do work-Related Activities (Mental) form, opining, among other things, that Plaintiff has a poor, or no useful abilities, to deal with the public, deal with work stresses, and maintain attention/concentration. [Doc. 11-7 at 975]. In contrast, the ALJ found that Plaintiff is "limited to understanding, remembering, and applying information for simple and low-level detailed tasks and to frequent interaction with supervisors, coworkers, and the general public." [Doc. 11-2 at 128].

Plaintiff's second argument is that the ALJ's discounting of the medical opinions of her mental health providers was not supported by substantial evidence. [Doc. 16 at PageID.1401-02].

Plaintiff filed her application for benefits in December 2017. [Doc. 11-2 at 123]. Therefore, the old rules for weighing medical opinions at 20 C.F.R. § 404.1527 do not apply. *Compare* 20 C.F.R. § 404.1527(c)(2) (2020) ("For claims filed before March 27, 2017, the rules in this section apply."), with 20 C.F.R. § 404.1520c (2020) ("For claims filed on or after March 27, 2017, the rules in this section apply.").

Under the new rules, "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources." 20 C.F.R. § 404.1520c(a).  The ALJ need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be.  20 C.F.R. § 404.1520c(c)(1).  The more consistent the medical opinion(s) is with the evidence from other medical and nonmedical sources, the more persuasive it will be.  20 C.F.R. § 404.1520c(c)(2).  The ALJ may, but is not required to, explain how she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how she considered the medical opinions.  20 C.F.R. §§ 404.1520c(b)(2)-(3).

In light of the foregoing new standards, the ALJ found the opinions of Plaintiff's mental health providers to be:

> … not persuasive, because [they] … are inconsistent with the mental status exams detailed throughout this provider's records, which document depression and/or anxiety but generally revealed no other abnormalities with the exception of intermittent decreased memory (Exs. 14F/47, 52-54, 57, 64, 67; 19F/24, 33-34, 43-44, 38-39, 48-49, 61, 64-65, 68, 71, 74; 23F/l-4, 8, 13, 18, 23, 30-33; 33F/2-9, 11-14)."  11-2 at 133.  Moreover, they are inconsistent with the wide range of daily activities documented throughout the decision.

[Doc. 11-2 at 133].  Additionally, the opinions are not well supported because, when asked to identify the "medical/clinical findings that support" their opinions of poor, or no useful ability to function, the treating sources responded (only) that Plaintiff "struggles with anxiety … cannot concentrate for long periods and has trouble staying focused due to racing thoughts, anxiety from worrying overly."  [Doc. 11-7 at 975].

**The ALJ properly evaluated the medical opinions of Plaintiff's treatment orthopedist.**

On June 28, 2018, Plaintiff's treating orthopedist, Barret Lessenberry, M.D., completed the Physical Medical Source Statement form, opining, among other things, that Plaintiff can:  1) Lift/carry 10 pounds occasionally and less than 10 pounds frequently; 2) Stand/walk for about 2 hours total (in an 8-hour working day, with normal breaks); and 3) Sit for about 4 hours total.  [Doc. 11-7 at 903-04].  The ALJ

5

found that Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; can stand/walk 6 hours total, and sit 6 hours total. [Doc. 11-2 at 127].

Plaintiff's third argument is that the ALJ's discounting of Dr. Lessenberry's medical opinions was not supported by substantial evidence. [Doc. 16 at PageID.1403-04].

Under the new rules for evaluating medical opinions discussed above, the ALJ found the opinions of the Commissioner's non-examining program physicians that Plaintiff can perform a limited range of light work to be persuasive and found Dr. Lessenberry's opinions to be:

> ... not persuasive, because it is inconsistent with imaging and diagnostic reports. It is further inconsistent with his last documented exam of the claimant in May 2018, which showed symmetrical reflexes, good sensation, good vascular flow, and unassisted ambulation. This opinion is also inconsistent with [Dr. Lessenberry's] 'best advice' that she begin a chronic exercise program (Ex. 7F/14). Moreover, the opinion is inconsistent with primary care exams during 2018 and 2019, which repeatedly documented normal gait/ambulation or noted no exam abnormalities with the exception of tenderness over fibromyalgia pressure points (Exs. 6F/61-62; 8F/3; l lF/7; 18F/8, 13, 15, 18; 21F/l-4, 9-13). The opinion is inconsistent with the impairment-related evaluation from January 2019, wherein the claimant reported only mild discomfort with most activities of daily living. While that exam noted decreased lumbar motion with muscle guarding/spasm, the claimant had normal mobility, no loss of balance, 5/5 lower extremity strength, and intact sensation/reflexes (Exs. 30F, 3 lF). Lastly, the opinion is inconsistent with the wide range of daily activities documented throughout the decision.

[Doc. 11-2 at 132]. Additionally, the opinions are not well supported because, when asked to identify supporting clinical findings and objective signs, Dr. Lessenberry responded (only) that "on exam, decreased reflex left lower [extremity], increased symptoms [with] SLR [straight leg raising], tenderness to percussion low back, motion is restricted in lumbar region, ambulates cautiously, creased sensation lateral part of left leg, MRI shows multi-level disc desiccation." [Doc. 11-7 at 902].

While Dr. Lessenberry found that the "clinical findings [are] consistent [with] S1 radiculopathy" [902], he did not see a surgical option because Plaintiff's electromyography (EMG) showed "no evidence of true lumbar radiculopathy" and her MRI revealed "desiccation of the disk at several levels but no frank disk herniation" [833]. The "substantial-evidence standard ... presupposes that there is a zone of choice

6

within which the decisionmakers can go either way, without interference by the courts." *Hizer v. Comm'r*, 852 F. App'x 999, 1001 (6th Cir. 2021) (quoting *Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009)).

**Order**

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

March 15, 2022

Lanny King, Magistrate Judge
United States District Court